954

GUILLERMO ATILES MORÉU, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, v. COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; SUCN. DE ALFONSO ORTIZ VÁZQUEZ, recurridos, EASTERN SUGAR ASSOCIATES, patrono.

Núm. 407.—*Sometido:* Marzo 1, 1949. *Resuelto:* Abril 29, 1949.

*Ángel de Jesús Matos, M. Maldonado Pacheco y Aída Casañas Marengo,* abogados del recurrente; *Cruz Ortiz Stella,* abogado de la Sucesión recurrida.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Al revocar la decisión del Administrador del Fondo del Seguro del Estado, por considerar que el obrero en este caso sufrió un accidente en el curso y como consecuencia de su trabajo y que su muerte fué acelerada por el mismo, la Comisión Industrial de Puerto Rico hizo constar en su resolución lo siguiente:

"*        *        *        *        *        *        *

"De las declaraciones de estos testigos, y considerada la prueba globalmente, se desprende que el día de autos, o sea, el 4 de julio de 1947, el obrero Alfonso Ortiz Vázquez en momentos en que se dedicaba a picar caña, y como a eso de las diez de la mañana más o menos, *resbaló cayendo de pecho sobre un tocón de caña habiendo continuado su trabajo.* La prueba asimismo demuestra que el obrero se quejó a sus compañeros de trabajo, que mientras continuó trabajando ese día hasta las dos de la tarde, constantemente se quejaba de dolor en el pecho. A las dos de la tarde se dirigió a su casa donde fué atendido por su señora esposa y a quien le relató lo ocurrido. Al día siguiente, en vista de que el dolor se agudizaba más, fué llevado al Hospital Municipal de Humacao donde murió, habiendo sido certificada su muerte por el Dr. Rincón como resultado de una trombosis de la coronaria.

"*        *        *        *        *        *        *

"Como dijimos en otra parte de esta resolución en cuanto a los hechos en sí se refiere, la prueba es absolutamente clara para demostrar *que el obrero sufrió el accidente alegado.* Como se ha podido ver, los testigos traídos por el Administrador del Fondo del Estado no dijeron prácticamente nada, siendo dicha prueba en extremo débil.

"En cuanto a la prueba médica se refiere ya hemos dicho que no se practicó autopsia alguna y que según el Dr. Cordero éste era el único medio de poder determinar la relación que pudo haber tenido el alegado accidente con dicha muerte, que por información fué certificada por el Dr. Rincón como de trombosis de la coronaria.

"Indudablemente que los beneficiarios probaron un caso prima facie en cuanto a la posible relación de la muerte con el accidente. El Administrador, sin embargo, no presentó prueba de clase alguna para contradecir la prueba de los beneficiarios en cuanto a la ocu-

rrencia del accidente, prueba que como ya dijimos, la Comisión Industrial la considera muy robusta. De haberse practicado la autopsia indudablemente que estaríamos hoy en mejores condiciones para resolver el caso, pero no habiéndose practicado, no podemos por ese solo hecho, *del cual no puede hacerse responsable a los beneficiarios,* denegar la reclamación en este caso.'' (Bastardillas nuestras.)

Solicitada la reconsideración por el Administrador, la Comisión la denegó. Expedimos el auto en este caso a petición del primero.

Después de haber considerado detenidamente la prueba presentada en las distintas vistas celebradas ante la Comisión Industrial, no tenemos duda que la misma demostró que el obrero Alfonso Ortiz Vázquez, mientras estaba trabajando como picador de caña de la Eastern Sugar Associates, el 4 de julio de 1947 a las diez de la mañana resbaló en una zanja y cayó de bruces recibiendo un golpe sobre el pecho con un tocón de caña; que dicho golpe le ocasionó un fuerte dolor del cual continuó quejándose hasta las dos de la tarde en que se retiró del trabajo para su casa; que ni él ni sus compañeros de trabajo que presenciaron la caída, informaron el accidente ocurrido al mayordomo debido a que el obrero manifestó que estaba en mala situación económica y que no podía esperar a las dietas que podían corresponderle debido a que éstas tardaban en llegar; que el obrero continuó con dolor en el pecho durante toda esa noche y al día siguiente por la mañana fué llevado por su esposa en una ambulancia al Hospital Municipal de Humacao, donde fué recluído y visto por el Dr. Yumet, quien lo examinó, no encontrándole trauma alguno; que el obrero se le quejó a dicho médico del dolor pero no le informó de la caída; que dos o tres horas después el obrero falleció habiendo sido certificada su muerte por el Dr. Rincón, actuando por información, pues él no vió al paciente en vida, como causada por una trombosis coronaria. Que el mismo día de la muerte del obrero, su viuda informó al Dr. Yumet de la caída que

había sufrido su esposo el día anterior y dicho médico dijo que estaba dispuesto a hacerle la autopsia si se le ordenaba; que ese mismo día un investigador del Fondo del Seguro del Estado investigó los hechos y dijo que enviarían un médico del Fondo desde San Juan a hacer la autopsia pero que ésta nunca se realizó; que aun después de enterrado el obrero, uno de los abogados del Fondo trató de conseguir, tanto a través del fiscal de Humacao como de la oficina del Procurador General en San Juan, que se ordenara la exhumación del cadáver del obrero para practicarle la autopsia, pero no pudo conseguirlo.

Tanto el Dr. Yumet, que vió al obrero antes de morir, como el Dr. J. Cordero, asesor médico de la Comisión Industrial, declararon que sin haberse practicado la autopsia no podían determinar con exactitud la causa de la muerte del obrero.[1] Sin embargo, el Dr. Cordero, después de haber oído la prueba, antes de declarar el Dr. Yumet, se expresó en la forma siguiente:

"Creo que la luz que se puede dar es prácticamente ninguna, si tenemos en cuenta que no tenemos elementos con los cuales poder trabajar para poder formar una teoría médica. Estamos, prácticamente, en las mismas condiciones que estaba el Dr. Rincón, cuando, por información, expidió una certificación de muerte como consecuencia de una trombosis de la coronaria. Es indudable que este hombre lo mismo puede haber muerto por trombosis de la coronaria, que por una hemorragia interna, que una pericarditis con derrame, una miocarditis, *puede haber muerto de muchísimas otras cosas, algunas de ellas puede ser un trauma, como el alegado y otras muchas, que como la trombosis de la coronaria, pueden ser agravadas por un trauma.* No estamos convencidos que el hombre sufrió una lesión de su corazón, ni tampoco podemos, de una manera categórica establecer la relación sin una autopsia, con una certificación de muerte por información, *con el historial de un posible trauma sobre la región pre-cordial o pectoral izquierda.* No creo que sea posible." (Bastardillas nuestras.)

[1] El Dr. Rincón no declaró en las vistas celebradas ante la Comisión ni hay prueba alguna que indique quién le suministró la información para expedir el certificado de defunción en el cual éste certifica que el obrero había fallecido de una trombosis coronaria.

Y después de haber oído al Dr. Yumet, el Dr. Cordero dijo lo siguiente:

"Señor Comisionado, nosotros insistimos en que la única forma de poder determinar una causa de muerte y si afectó o no afectó el alegado accidente alguna condición que el obrero tuviera, hubiera sido por eso a base de una autopsia, que a falta de ella únicamente había que depender de la prueba testifical sin la declaración de los médicos porque la declaración de los médicos no arrojaría luz absolutamente ninguna sobre este caso."

De acuerdo con esta prueba no tenemos duda alguna de que la Comisión Industrial no erró al resolver que el obrero sufrió un accidente en el curso y como consecuencia de su trabajo. En cuanto al hecho en sí de la caída y del golpe recibido por el obrero, la prueba de los beneficiarios no fué controvertida en forma alguna por el peticionario pues no consideramos que el hecho de que al día siguiente, al ser examinado el obrero por el Dr. Yumet no presentara señal alguna de trauma, sea suficiente para controvertir las declaraciones de varios testigos que presenciaron la caída y el golpe recibido por el obrero.

La cuestión fundamental envuelta en el presente caso es si el hecho de haberse certificado por un médico que no vió al obrero en ningún momento en vida y sin que se le hubiera practicado una autopsia después de su muerte, que el obrero falleció a consecuencia de una trombosis coronaria, es suficiente para eliminar la probable relación de causa y efecto entre el accidente y la causa de la muerte del obrero. Tomando en consideración la declaración del Dr. Cordero, creemos que tampoco erró la Comisión Industrial al resolver que, cualquiera que hubiera sido la causa efectiva de la muerte del obrero, su muerte fué acelerada por el accidente que sufrió en el curso y como consecuencia de su trabajo.

Arguye el Administrador que no habiéndose practicado la autopsia y habiéndose certificado la muerte como conse-

cuencia de una trombosis coronaria, el accidente, de haber ocurrido, no es compensable. No tiene razón. El hecho de que no se practicara la autopsia no fué, según demostró la prueba, culpa de los beneficiarios. Además, la propia Ley de Compensación por Accidentes del Trabajo en su artículo 5, dispone que en el caso de muerte de un obrero bajo las condiciones que fija la ley, el Administrador podrá ordenar que se practique la autopsia del cadáver si los familiares del difunto consienten en que se lleve a cabo pero, expresamente dispone ''que la negativa de los familiares o beneficiarios a consentir que la autopsia se practique no afectará en ninguna forma su derecho a reclamar y obtener compensación, ni constituirá presunción alguna contraria al derecho de los reclamantes.'' (Ley núm. 45 de 18 de abril de 1935.)

En el presente caso los beneficiarios nunca se opusieron a que se practicara la autopsia y el hecho de que el Administrador no la ordenara a tiempo o que más tarde no pudiera conseguir la exhumación del cadáver para realizarla, no puede en forma alguna afectar el derecho de los primeros para obtener compensación ni constituye presunción alguna contraria a tal derecho. Por otra parte, no damos gran importancia al hecho de que se certificara la muerte como consecuencia de una trombosis coronaria, ya que el médico que así lo hizo ni siquiera vió al obrero en vida y el Dr. Yumet, que fué el único facultativo que lo vió, negó haberle dado tal información al Dr. Rincón.

Dadas las circunstancias especiales concurrentes en el presente caso en cuanto a no haberse determinado, por medio de la autopsia del cadáver del obrero, la causa exacta de su muerte, pero sí existiendo un factor exacto previo, o sea el accidente, no erró a nuestro juicio la Comisión al resolver que la muerte del obrero fué acelerada como consecuencia del accidente que sufrió.

*Debe confirmarse la resolución recurrida.*